HUNT v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1899.)

No. 554.

RECEIVERS—RIGHT OF APPEAL—ADMINISTRATIVE ORDERS.

An order directing a receiver for an insolvent railroad to construct and maintain gates and other safeguards at the crossing of another road, in accordance with a contract by a predecessor of the insolvent company, and made on the petition of the company owning the other road, setting forth that the crossing was dangerous, is not a decree for specific performance, adjudicating the rights of the respective companies under the contract, but merely an interlocutory order in the receivership, directing the receiver in the administration of the estate, from which he cannot appeal.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This appeal is from an order or decree entered in the circuit court upon the hearing of matters which are presented under an intervening petition filed by the Illinois Central Railroad Company and an answer thereto by the receiver, in an action pending in that court for the foreclosure of a mortgage against the Toledo, St. Louis & Kansas City Railroad Company (hereinafter called the "Toledo Company"), wherein the Continental Trust Company of New York and John M. Butler are complainants. The original appellant was Robert B. F. Peirce, acting as receiver under appointment by the court in the foreclosure action, and as such in possession of and operating the railroad of the Toledo Company. At the hearing of the appeal, suggestion being made of the resignation of such receiver and the appointment of Samuel Hunt in his place, an order was entered continuing the appeal in the name of such new receiver. The petition of the intervener alleges that the defendant, Toledo Company, is the "legal successor and assign of the Charleston, Neoga & St. Louis Railroad Company (hereinafter called the 'Neoga Company'), and as such succeeds to and is legally bound to perform all the obligations" of the Neoga Company; that on the 20th day of June, 1881, the Neoga Company, for the purpose of obtaining permission to cross the right of way and track of the petitioner, Illinois Central Railroad Company, entered into a written contract as follows: "Memorandum of agreement by and between the Illinois Central Railroad Company, party of the first part, and the Charleston, Neoga & St. Louis Railroad Company, party of the second part, witnesseth: The party of the second part desires to cross the right of way and track of said Illinois Central Railroad Company at a point one thousand four hundred and eighty-eight (1,488) feet south of the center of the depot building of said company at Neoga station: Now, therefore, the consent of the party of the first part is hereby given to the party of the second part to make said crossing, on the following terms and conditions, to wit: In consideration of the

foregoing grant and privilege, the party of the second part, its successors and assigns, hereby covenant and agree to furnish good and suitable crossing frogs, and place the same in track in a substantial manner, free of all cost to, and subject to the approval of, the party of the first part, and to keep said crossing frogs in good condition for the passage of trains of both parties hereto, and repair and renew the same when necessary, from time to time; all of said work to be at the expense of the party of the second part. And the party of the second part, its successors and assigns, also covenant and agree to erect and maintain crossing gates for all tracks which are or may be built, and shall provide said gates with necessary signal lights at night; and when notified in writing, by the party of the first part, the party of the second part, its successors and assigns, shall provide and pay competent men to attend to and open and close said gates, as may be directed by said party of the first part, and to attend and to keep in order said signal lights. The party of the second part shall put in on its track, at the points of intersection with the right of way of the Illinois Central Railroad, cattle guards to prevent stock from getting upon the Illinois Central Railroad Company's tracks. It is further agreed, in consideration of the rights and privileges herein granted by the party of the second part, that if the party of the first part shall, at any future time, lay one or more additional tracks on its right of way, so as to intersect the track of the Charleston, Neoga & St. Louis Railroad Company, the party of the second part, its successors and assigns, shall furnish and lay in its track, ready for use, the necessary crossing frogs, and shall keep the same in good condition and repair, and renew the same, when necessary, from time to time, in perpetuity; all of said work to be done at the expense of the party of the second part. It is distinctly understood and agreed, by and between the parties hereto, that the party of the first part shall be held free in perpetuity from all expense and expenditures of every kind, on account of said crossings and gates and gate tenders, as aforesaid." The petition further alleges that the provision of the contract for the erection, maintenance, and operation of crossing gates "has not been complied with in any respect" by said Neoga Company, or by its successors, although "the defendant company and its receiver have been" requested and notified in writing to do so, and that several collisions have resulted from such failure. The prayer for relief is as follows: "In view of the premises stated, your petitioner prays that a short rule may be entered against Robert B. F. Peirce, the receiver appointed under the prayer in the original bill in this case, requiring him to show cause why he has not complied with said contract and built said crossing gates; and that on a full hearing your honor will order the said Robert B. F. Peirce, receiver, to proceed without delay, and build said crossing gates, and maintain the same, according to the terms of said contract." The answer of the receiver, after stating the proceedings and orders relating to his appointment and his possession thereunder, alleges certain acts of consolidation, a subsequent mortgage and a foreclosure and sale, through which title passed to the Toledo Company, defendant, and in effect denies any obligation on either said defendant or the receiver to perform the undertaking respecting gates and signal lights. It also asserts the injustice of the provision, the inadequacy of the device, and other grounds for refusing to comply with the demand. The defendants in the foreclosure action were not cited, and took no part in the hearing. The order or decree thereupon reads as follows: "And now, on this day, come the said petitioner, by William H. Green, its solicitor, and the said Robert B. F. Peirce, as aforesaid, by Clarence Brown, Esq., his solicitor, and this cause coming on to be heard, the court hears evidence and argument for both the petitioner and the receiver, and the court finds that on the 20th day of June, 1881, the Charleston, Neoga & St. Louis Railroad Company made and entered into a certain contract in writing with said petitioner concerning the crossing of the petitioner's railroad at Neoga station, in the state of Illinois, by the railroad of the said Charleston, Neoga & St. Louis Railroad Company, was made defendant in this court to answer a bill to foreclose a mortgage on its said railroad, and a decree was entered ordering that said railroad be sold, and it was sold, at public judicial sale, and by mesne conveyances from the purchaser at said sale the railroad of the said Charleston, Neoga & St. Louis Railroad Company became and is the property of the Toledo, St. Louis & Kan-

sas City Railroad Company aforesaid. The court further finds that the aforesaid contract contained covenants which are obligatory upon the Toledo, St. Louis & Kansas City Railroad Company holding title to said railroad under a judicial sale thereof, and which require the said company to erect and maintain crossing gates for all tracks of Illinois Central Railroad Company at the crossing of said tracks at Neoga, Illinois, aforesaid, and provide said gates with necessary signal lights at night, and provide and pay competent men to attend to and open and close said gates, and keep in order said signal lights, in such way as may be directed by the said Illinois Central Railroad Company. The court further finds that the railroad, and all the property in the state of Illinois, of the said Toledo, St. Louis & Kansas City Railroad Company, connected with the running of its said railroad, has been by the decree of this court placed in the hands and control of Robert B. F. Peirce, as the receiver of this court, under his direction and control. Therefore it is ordered, adjudged, and decreed that, at the cost of the Toledo, St. Louis & Kansas City Railroad Company, aforesaid, crossing gates be erected and maintained for all the tracks at the crossing of the Illinois Central Railroad by the Toledo, St. Louis & Kansas City Railroad at said Neoga station, in the state of Illinois, and said gates be provided with necessary signal lights at night, and competent men be employed to attend to and open and close said gates, and keep in order said signal lights, as may be directed by the Illinois Central Railroad Company. And the court further orders that the said Robert B. F. Peirce forthwith proceed to carry this decree into effect, and report his actions and doings in this behalf to this court."

Clarence Brown, for appellant.

William H. Green, for appellee.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after the foregoing statement, delivered the opinion of the court.

This appeal is by the receiver alone, and the argument on his behalf assumes that the decree or order in question is one for specific performance of the contract of the Neoga Company. It is thereupon contended (1) that the contract was a mere parol executory license; (2) that as such, being revocable and unrecorded, it was not binding on the defendant or the receiver; (3) that, being executory, the receiver could adopt or reject at his option; (4) that personal services were required by the contract, for which there can be no decree for specific performance; (5) that petitioner had an adequate remedy at law; (6) that the defendant company neither appeared nor was cited, and the decree was improper as one of specific performance affecting such defendant.

If this assumption is well founded as to the nature of the decree or order,—that it is an adjudication of specific performance of the covenants of the contract made by the original Neoga Company, as covenants running with the railroad property and binding upon purchasers,—the objections to such decree are not without force, and should be considered. On the other hand, if the order is purely interlocutory and administrative, operating alone upon the management of the receiver, it is not dependent upon the obligations of the contract, but upon an exercise of judicial discretion; and there is no adjudication of permanent liability to run with the property, the contract being treated as evidence by which to ascertain the reasonableness and measure of the duty imposed by the order upon the re-

ceiver. In the brief for the appellee it is said: "The order is interlocutory in the fullest sense of the term. It is in no sense a 'final decision.' It was not necessarily entered of record. Its validity did not depend upon its being in writing. It may be modified or changed or canceled by the court which made it." And, so considered, it is not material to inquire whether the covenants are binding beyond the original contractor, nor is the wisdom or propriety of the order open to review on behalf of the receiver.

We are of opinion that the so-called "decree" from which the appeal was allowed is exclusively an order of the court directing the receiver "in the administration of the estate," such as the recent opinion of Mr. Justice Brewer, for the supreme court, in Bosworth v. Association, 19 Sup. Ct. 625, clearly defines as one resting in "the sound discretion of the trial court," and not subject to appeal by the receiver.

Possession of the railroad property in controversy is in the circuit court, operating through a receiver, and it is charged with the duty of providing means and measures for safe and efficient operation. The facts are undisputed that the crossing referred to is dangerous, and that means are both attainable and necessary to protect passing trains. By the petition of the intervener, action of the court was invoked to that end, calling attention to the danger, to the need of devices for protection, and to refusal on the part of the receiver to make provision therefor. The petition further sets up the contract entered into by the Neoga Company as ground for requiring the receiver to furnish the appliances and services there mentioned; and the sole prayer is for a rule on the receiver to show cause, and that upon hearing he be ordered "to proceed without delay, and build said crossing gates, and maintain the same, according to the terms of said contract." The order, in effect, proceeds no further than such direction to the receiver, the expense to be borne by the property in his hands. Whether the court, in exercising its undoubted discretion in that regard, treated the contract either as entitled to equitable consideration in fixing this slight burden upon the estate, or as a legal charge, does not change the character of the order. The recitals which appear by way of findings are mere reasons for exercising the discretion, and not essential to the order, and cannot serve to extend its scope into an adjudication respecting rights and interests which were neither before the court nor necessarily involved. No appeal from the order would extend beyond its final requirement, by which crossing gates and signals are adopted for protection, and the receiver directed to furnish and maintain such means at the expense of the estate. On this conclusion, in a matter within the sound discretion of the court, the sole inquiry on review would be whether it constituted an abuse of discretion; and if it be assumed, by way of argument, that the means selected were not adequate, and that good reason did not appear for charging the receivership alone with performance, the utmost of the assumption would involve mere error in judgment, and in no sense an abuse of discretion. As the question is clearly administrative, relating to provision for safety in the operation of the road, its determination by the court and the

direction for performance are conclusive upon the receiver, and he cannot appeal. See Bosworth v. Association, supra, reviewing and distinguishing the decision of this court in the same case (53 U. S. App. 302, 26 C. C. A. 279, and 80 Fed. 969).

The appeal is dismissed.